**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 10-cv-03153-REB

RANDALL TODD ROYER,

    Applicant,

v.

BLAKE DAVIS,

    Respondent.

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

**Blackburn, J.**

This matter is before me on the *pro se* **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241** ("Application") [#1][1] filed on December 28, 2010, by Applicant Randall Todd Royer.  Respondent filed a **Response** [#17], and Applicant thereafter filed a **Reply to Respondent's Response** ("Reply") [#18].

I must and do construe the Application liberally because Applicant is not represented by an attorney.  ***See Haines v. Kerner***, 404 U.S. 519, 520 (1972) (per curiam); ***Hall v. Bellmon***, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, I may not be an advocate for a *pro se* litigant.  ***See Hall***, 935 F.2d at 1110.

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF).  I use this convention throughout this order.

After reviewing the pertinent portions of the record in this case, including the Application, Response, and Reply, I conclude that the Application should be denied.

## I.  BACKGROUND

Applicant is incarcerated at the United States Penitentiary, Administrative Maximum, in Florence, Colorado ("ADX").  Respondent Blake Davis is the Warden of the ADX.  Applicant was convicted in the United States District Court for the Eastern District of Virginia of aiding and abetting the use and discharge of a firearm during and in relation to a crime of violence, and aiding and abetting the carrying of an explosive during the commission of a felony.  He currently is serving a 240-month federal sentence for that conviction.

On October 7, 2009, while Applicant was incarcerated at the Federal Correctional Institution in Terre Haute, Indiana ("FCI - Terre Haute"), the Federal Bureau of Prisons ("BOP") issued an incident report charging him with assaulting another prisoner earlier that day.  Response Ex. 3.  On October 8, 2009, Applicant was transferred to the Federal Correctional Institute in Greenville, Illinois ("FCI - Greenville").  Application at 15.

Under former 28 U.S.C. § 541.14(a),[2] the discipline process for prohibited prisoner acts such as assault starts with the BOP's issuance of an incident report, followed by an investigation if informal resolution is inappropriate or unsuccessful.  The incident report then is referred to the Unit Disciple Committee ("UDC") for an initial

---

[2]Former 28 U.S.C. § 541.14 was in effect until June 19, 2011, and is now codified with modifications at 28 C.F.R. § 541.5.

hearing, which, under former 28 C.F.R. § 541.15(b),[3] is "ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident." Thereafter, "[w]hen an alleged violation of Bureau rules is serious and warrants consideration for other than minor sanctions, the UDC shall refer the charges to the Discipline Hearing Officer ["DHO"] for further hearing." Former 28 C.F.R. § 541.15(h). Under former 28 C.F.R. § 541.15(k), "[t]he UDC may extend time limits imposed in this section for good cause shown by the inmate or staff and documented in the record of the hearing."

The UDC initial hearing was held on November 16, 2009. Application at 18. At the hearing, Applicant was given a memorandum entitled "Advisement of UDC Delay(s)" ("Delay Memo"), which stated that the hearing had been delayed because "FCI Greenville received the incident report on November 11, 2009." *Id.* Ex. 2. However, Applicant has submitted evidence that the incident report charging him with assault was actually emailed to staff at FCI - Greenville on October 9, 2009. *See Id.* Ex. 1. At the initial hearing, the UDC referred the charge to a DHO for a disciplinary hearing pursuant to former 28 C.F.R. § 541.15(h). *Id.* at 19.

The DHO hearing was held on November 20, 2009. Response Ex. 4. Applicant requested that his correctional counselor, Don Perfetti, serve as his staff representative at the hearing, and that he be allowed to call four specified witnesses. *Id.* Ex. 4. Each

---

[3] Former 28 U.S.C. § 541.15 was in effect until June 19, 2011. 28 C.F.R. § 541.7, in effect as of June 20, 2011, now provides that "[t]he UDC will ordinarily review the incident report within five work days after it is issued," and "you are permitted to appear before the UDC during its review of the incident report . . . ." 28 C.F.R. § 541.7(c), (d).

3

of the four witnesses requested by Applicant provided written witness statements. *Id.* Exs. 6, 8-11, 13. After the hearing, the DHO found Applicant guilty of "the prohibited act of Code 224, Assaulting any Person, based upon the reporting officers [sic] statement, the Medical Assessments, and also your own admission." *Id.* Ex. 13 at 2. The DHO sanctioned Applicant by, among other things, removing 27 days of his good time credit. *Id.* Ex. 13 at 3.

Applicant appealed the DHO's decision, and the BOP thereafter issued a memorandum on February 8, 2010, stating that the incident report was being returned for reconsideration because "a procedural error was discovered." *Id.* Ex. 14 at 2. The memorandum stated that although the DHO Report reflected that a staff representative appeared at the hearing, the report "indicated 'None' as the statement of the staff representative." *Id.* Ex. 14 at 1. Additionally, the memorandum noted that "the witness statements are not documented in the DHO Report." *Id.* Ex. 14 at 1.

A second DHO hearing was held on March 11, 2010, before a different DHO. *Id.* Ex. 15. Applicant again requested that Perfetti serve as his staff representative, and the DHO Report noted Perfetti's statement at the hearing that "[Applicant's] rights have been afforded to him." *Id.* Ex. 15. The DHO Report also included each of the four witness statements. *Id.* Ex. 15 at 1-2. After the hearing, the DHO found Applicant guilty of "the prohibited act of Code 224, Assaulting any Person, based upon the reporting officers [sic] statement, the Medical Assessments, and also your own admission." *Id.*

Ex. 15 at 2. The DHO ordered sanctions including the loss of 27 days of good time credit. *Id.* Ex. 15 at 4.

Applicant asserts two claims in this Application: (1) that his rights to due process were violated because he did not receive an impartial hearing, and (2) that his rights to due process were violated because his staff representative failed to adequately assist him. He seeks relief in the form of "a declaration that BOP staff violated Applicant's Fifth Amendment due process rights," and an order enjoining the BOP to: "expunge the subject incident report and related documents," restore Applicant's good time credits, and "conduct a review of whether any collateral consequences suffered by Applicant are warranted in light of the Court's judgement, including continued ADX confinement." Application at 5.

## II. DISCUSSION

Applicant's first claim asserts that Applicant's rights to due process were violated because he did not receive an impartial hearing, based on his contention that the DHO at the second hearing, as well as the UDC members and the Warden, had improper motives and were biased against him.

A fundamental requirement of due process is the opportunity to be heard, **Armstrong v. Manzo**, 380 U.S. 545, 552 (1965), and "[a]n impartial decisionmaker is a fundamental requirement of due process that is 'fully applicable' in the prison context." **Gwinn v. Awmiller**, 354 F.3d 1211, 1220 (10th Cir. 2004) (quoting **Wolff v. McConnell**, 418 U.S. 539, 592 (1974) (Marshall, J., concurring)). Thus, "[w]hen a prisoner asserts a

valid challenge to the factfinders' neutrality . . . judicial review of disciplinary decisions must include an inquiry into whether discipline was imposed for an improper purpose." **Smith v. Maschner**, 899 F.2d 940, 947 (10th Cir. 1990). However, "because honesty and integrity are presumed on the part of a tribunal, there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." **Gwinn**, 354 F.3d at 1220 (citation omitted). "Due process is satisfied as long as no member of the disciplinary board has become involved in the investigation or presentation of the particular case or has any other form of personal involvement in the case." **Id.** (quoting **Wolff**, 418 U.S. at 592 (Marshall, J., concurring)); **see also Malek v. Camp**, 822 F.2d 812, 816 (8th Cir. 1987).

Even if one were to assume that the reason for the UDC hearing delay given in the Delay Memo was false, and that the DHO at the second hearing knew that it was false, such circumstances would have no bearing on whether the DHO was "actually biased with respect to [the] factual issues being adjudicated." **Gwinn**, 354 F.3d at 1220. The "factual issues being adjudicated" in the DHO hearing concerned whether Applicant had assaulted another prisoner, not whether or why there had been a hearing delay. The record in this case does not reflect that the DHO was in any way involved in the facts giving rise to the assault charge. Applicant offers that, "[b]ecause the DHO's overriding motivation in the course of these proceedings was to enter a guilty finding against Applicant, as opposed to adhering to procedural rules that, if followed, [he] feared would lead to a dismissal of the charges, his decision to conceal his knowledge

of the procedural violation and enter a guilty finding was arbitrary and violated due process." Reply at 18.  Thus, Applicant argues, because the DHO was biased against him, he concealed a procedural violation which, Applicant asserts, could have led to the dismissal of the charge.  However, there is no evidence to support the foundational contention that the DHO was biased against Applicant in the first instance.  While the existence of bias might be relevant to proving concealment, concealment is not relevant to proving the existence of bias, since it has no bearing on whether the DHO had "personal involvement in the case."  Applicant's bare allegation that the DHO's "overriding motivation" was to find Applicant guilty is insufficient. Applicant fails to circumstantiate this assertion.

Further, the timing of the UDC hearing could not have served as grounds for dismissal of the assault charge in any event.  Although under former 28 U.S.C. § 541.19[4] a DHO decision may be reversed or sent back with directions on administrative appeal based on considerations including whether the DHO "substantially complied with the regulations on inmate discipline," there was no failure to substantially comply with the inmate disciplinary regulations in this case.  This court has concluded previously that "[former] 28 C.F.R. § 541.15(b) recommends, but does not require, that the UDC hearing be held within three days of the incident."  **Saleh v. Davis**, 2010 WL 5676524, *4 n.3 (D. Colo. Nov. 4, 2010); *see also Saleh v. Davis*, 2011 WL 334321 (D.

---

[4]Former 28 U.S.C. § 541.19 was in effect until June 19, 2011.  28 U.S.C. § 541.8(i), effective June 20, 2011, now provides that inmates may appeal DHO decisions through the Administrative Remedy Program, 28 C.F.R. §§ 542.10-542.19.

Colo. Jan. 31, 2011) (accepting Magistrate Judge's Recommendation).  Although the "good cause" language of former 28 C.F.R. § 541.15(k) does inject an element of ambiguity, ultimately it is impossible to read former § 541.15(b) as mandating a strict three-day time limit because the regulation expressly states that the hearing will only "ordinarily" be held within three days.  If the drafters of former § 541.15(b) had intended to impose a mandatory, non-flexible deadline, they would not have chosen to employ the word "ordinarily."  Applicant argues that the language in the Delay Memo indicates that the BOP treats the three-day period as mandatory, but in fact the Delay Memo simply includes a recitation of the language of former § 541.15(k), adding that the UDC shall ensure that the inmate is advised of any delay.  *See* Application Ex. 2.  The Delay Memo additionally states that the Warden must approve any extension beyond *five* days, which supports a reading of former § 541.15(b) as not mandating a strict three-day deadline.  *See id.*  Thus, because holding the hearing more that three days after staff notification would not have constituted a failure to substantially comply with the inmate disciplinary regulations, it could not have constituted grounds for reversal of Applicant's disciplinary conviction.[5]

Applicant's first claim alleges also that the UDC members and the Warden of FCI-Greenville violated Applicant's rights to due process by stating an allegedly false reason for the hearing delay in the Delay Memo.  However, even if the UDC and

---

[5] I further note that Applicant has failed to show that he was prejudiced in any way by the timing of either the UDC or DHO hearings.  He has not shown, for example, that he was prevented from presenting any particular evidence or any specific witnesses as a result of the alleged delay.

Warden did make false statements, and I make no such factual finding, such actions would not impact whether the charge against Applicant was heard by an impartial factfinder at the DHO hearing. There is no evidence that any member of the UDC or the Warden of FCI-Greenville had personal involvement in the facts giving rise to the assault charge, *see Gwinn*, 354 F.3d at 1220; *Wolff*, 418 U.S. at 592 (Marshall, J., concurring), and, in any event, they were not the decisionmakers at the DHO hearing. Additionally, any failure to hold the hearing within three days after staff were notified of the incident did not constitute a procedural violation that could have supported reversal on administrative appeal, for the reasons discussed above. Applicant was not denied a meaningful opportunity to be heard, and he has failed to establish a due process violation based on alleged decisionmaker bias.

In his second claim, Applicant asserts that his rights to due process were violated because Perfetti failed to assist him adequately at the DHO hearing. Specifically, Applicant alleges that although Perfetti knew that there was no good cause for the UDC hearing delay because he had received the October 9, 2009, email, he failed to reveal that knowledge even though doing so would have provided a potential ground for dismissal of the charge. "A prisoner does not have a right to have a staff representative assist him during the disciplinary process." *Jordan v. Wiley*, 2009 WL 1698509, *9 (D. Colo. June 17, 2009) (citing *Wolff*, 418 U.S. at 570)). "Instead, due process requires that inmates be provided with the aid of a staff representative only where the inmate is illiterate or 'the complexity of the issue makes it unlikely that the inmate will be able to

collect and present the evidence necessary for an adequate comprehension of the case.'" *Id.* (quoting **Wolff**, 418 U.S. at 570). Where there is no constitutional right to staff assistance, there can be no due process violation based on inadequate staff assistance. **See e.g. Duarte v. Turner**, 1995 WL 57187, *3 (7th Cir. Feb. 10, 1995).

Applicant asserts that while the disciplinary proceedings may not have been conceptually complex, they were procedurally complex because he had no ability to "collect and present the material necessary" to show that the incident report had been emailed to staff at FCI-Greenville on October 9, 2009. **See** Reply at 26-27.[6] However, Applicant's unawareness of, or inability to access, a particular document does not mean that the disciplinary proceedings were procedurally complex. The procedural rules that were applied in Applicant's case were the same as those applied in all inmate discipline proceedings, and Applicant has identified no unusual procedural complexity in his case. Accordingly, Applicant did not have a constitutional right to staff assistance during the disciplinary process.

In any event, a statement by Perfetti that the incident report had been emailed to staff on October 9, 2009, would not have resulted in dismissal of the assault charge or reversal on administrative appeal, since, as discussed above, holding the UDC hearing more than three days after the notification date did not violate BOP regulations.

---

[6]Applicant ultimately was able to obtain the October 9, 2009, email himself via a FOIA request. Application at 23-24.

Applicant has failed to establish a due process claim based upon inadequate staff representation.

## III. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241** [#1] filed on December 28, 2010, by Applicant Randall Todd Royer is **DENIED**; and

2. That this case is **DISMISSED WITH PREJUDICE**.

Dated July 20, 2011, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge